**SO ORDERED.**

**SIGNED this 18th day of January, 2023.**



*Dale L. Somers*
—————————————————————
Dale L. Somers
United States Chief Bankruptcy Judge

———————————————————————————————————————————

Designated for online use only
**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS**

In re:

Kyle Lee Kinderknecht
Chasity Dawn Kinderknecht,

              Debtors.

Case No. 17-12530-13

**Memorandum Opinion and Order Granting
Debtors' Motion to Determine Mortgage Payment and for Sanctions**

Debtors Kyle and Chasity Kinderknecht have maintained payments on

their mortgage debt through their Chapter 13 plan. After completion of plan

payments, the Chapter 13 Trustee filed a "notice of final cure payment,"

indicating Debtors had made all postpetition mortgage payments and were

current on their mortgage debt as of June 13, 2022. The mortgage creditor,

Golden Belt Bank, did not file a response to that notice. Instead, Golden Belt

Bank sent a letter to Debtors seeking increased monthly payments on the mortgage debt, due to an escrow deficiency. Debtors filed a motion seeking a determination that their mortgage payment is current and for sanctions.[1]

The Court concludes Golden Belt Bank failed to timely notify Debtors of changes to their interest rate and escrow account payment requirements under Federal Rule of Bankruptcy Procedure 3002.1(b).[2] As a result, under Rule 3002.1(i), the Court excludes evidence of those changes, and under Rule 3002.1(h) confirms the mortgage is current as of the Chapter 13 Trustee's notice of final cure payment on June 13, 2022. Golden Belt Bank must credit the deficient escrow account the amount needed to be current as of June 13, 2022, and then run a new escrow analysis. Further, Golden Belt Bank is prohibited from charging any fees against Debtors for work surrounding this matter. Debtors' counsel should file a notice with an itemization of fees related to this matter, and the Court will consider that itemization and then enter a separate order requiring Golden Belt Bank to pay those fees.

---

[1] Doc. 122. Debtors appear by January Bailey; Golden Belt Bank appears by Nicholas Grillot.

[2] All further references in the text to "Rule" shall be to the Federal Rules of Bankruptcy Procedure.

## I. Findings of Fact and Procedural History[3]

Debtors filed a Chapter 13 bankruptcy petition on December 29, 2017. Golden Belt Bank filed multiple claims in Debtors' case,[4] but only one of them is relevant herein: Proof of Claim No. 12, for a first mortgage loan, with a balance at filing of $120,721.29.[5] Debtors had no arrearage on the first mortgage at filing, and this was confirmed by Golden Belt Bank.[6]

Debtors' plan was confirmed on March 13, 2018. Debtors agreed to make direct monthly payments of $1041.30 to Golden Belt Bank on the first mortgage.

Regarding the payment on the first mortgage, the payment included an escrow account, and at the time the bankruptcy case was filed, the monthly escrow payment was $312.39. The interest rate on the first mortgage loan

---

[3] The parties filed a joint Stipulation of Facts, Doc. 131, and the Court also gathered factual and procedural background from the docket in this bankruptcy case. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (holding that a court may *sua sponte* take judicial notice of its docket).

[4] Other claims filed by Golden Belt Bank are: Proof of Claim No. 7, for $41,717.10; Proof of Claim No. 8, for $74,064.73, secured by equipment and machinery; Proof of Claim No. 9, for $30,007.16, secured by a motor vehicle; Proof of Claim No. 10, for $42,809.32, secured by a motor vehicle; Proof of Claim No. 11, for $11,103.74, secured by a motor vehicle; and Proof of Claim No. 13, for a second mortgage on the real property, for $855.51.

[5] Debtors initially also moved for certain relief regarding their second mortgage, Proof of Claim No. 13, but report all issues regarding the second mortgage have been resolved. Debtors' confirmed plan proposed to pay off the second mortgage of $855.51 through plan payments, and Debtors apparently did so.

[6] Doc. 2 (plan); Doc. 25 (agreed order resolving Golden Belt Bank's treatment under plan).

was variable and could be adjusted annually beginning with the payment due July 1, 2019. At filing, the interest rate was 5.25%.

About six months after plan confirmation, on September 19, 2018, Golden Belt Bank filed a motion for relief from stay, indicating Debtors were delinquent on mortgage payments and had not made a payment since May 2018. Debtors objected to stay relief and proposed to modify their confirmed plan. An agreed order was entered modifying the plan on January 10, 2019.[7] Under the agreed order, Debtors agreed to pay the first mortgage through the Trustee beginning in December 2018 and agreed that the arrearage of $7523.30 would also be paid through the plan at 6% interest. Regarding the monthly mortgage payment, the agreed order stated:

> The ongoing mortgage payment, including escrow amounts, is $1,037.11, beginning July 1, 2018, which is a reduction from $1,041.30. Late fees are $36.45 per month. This order shall satisfy as the Notice of Mortgage Payment Change for this change, however, future changes in the mortgage payment shall be filed with the proper Notice of Mortgage Payment Change pursuant to Rule 3002.1[.][8]

The agreed order did not specify the portion of the payment that was principal and interest versus escrow and did not state the then-current interest rate. The agreed order does commit to filing a "proper Notice of Mortgage Payment Change pursuant to Rule 3002.1" going forward.

---

[7] Doc. 55.
[8] *Id.* p. 2 ¶ 4.

4

About a year and a half passed. On July 9, 2020, Golden Belt Bank filed a Notice of Mortgage Payment Change, changing the monthly payment from $1037.11 to $1034.23, due to an interest rate adjustment from 5.38% to 5.25%.[9] The principal and interest was reduced from $734.44 to $726.03, and $308.20 was stated as the escrow payment. Obviously, at some point, the interest rate had been changed from the 5.25% applicable at the time Debtors' petition was filed.

Nothing was filed in the case regarding this issue for almost two years. On April 1, 2022, the Chapter 13 Trustee filed a notice that Debtors' plan was approaching completion. On June 13, 2022, the Chapter 13 Trustee then filed three documents:

> (1) a Final Accounting, noting $52,779.54 had been paid to Golden Belt Bank on Proof of Claim No. 12 ($43,579.06 principal, $8500.48 for the postpetition arrearage, and $700 attorney's fee), the first mortgage;[10]
>
> (2) a Notice of Completion of Plan Payments, indicating all payments required under Debtors' plan had been completed;[11] and
>
> (3) the Trustee's Notice of Final Cure Payment Pursuant to Federal Rule of Bankruptcy Procedure 3002.1(f), indicating Debtors had cured all defaults and were current on their first mortgage.[12]

---

[9]  Proof of Claim No. 12, Notice of Mortgage Payment Change dated July 9, 2020.
[10]  Doc. 113. The Trustee paid Golden Belt Bank $1,041.30 per month for the payments due December 1, 2018, to July 1, 2020, and $1,034.23 per month for the payments due August 1, 2020, to May 1, 2022.
[11]  Doc. 114.
[12]  Doc. 115.

In addition to stating Debtors were current on the first mortgage, the Notice of Final Cure also stated:

> Within 21 days of the service of this Notice, the creditor must file and serve same on debtor, debtor's counsel, and Trustee, pursuant to Federal Bankruptcy Rule 3002.1(g), a statement indicating whether it agrees that the debtor has paid in full the amount required to cure the claimed default, has paid all outstanding post-petition fees, costs or escrow amounts due, and whether, consistent with § 1322(b)(5), the debtor(s) is current on all post-petition payments as of the date of this Notice or be subject to further action of the Court including possible sanctions.[13]

An order was entered approving the Chapter 13 Trustee's Final Accounting, and Debtors' discharge was entered July 7, 2022. It is undisputed that Golden Belt Bank did not file a statement responding to the Trustee's Notice of Final Cure, as required by Rule 3002.1(g).

On August 18, 2022, before Debtors' case was closed but after the entry of discharge, Debtors filed their motion for determination of final cure and motion for sanctions. Debtors indicated they received an annual escrow analysis from Golden Belt Bank, dated June 17, 2022, stating an escrow deficiency of $2918.35. As a result of receiving this letter, Debtors contacted Golden Belt Bank to provide correct insurance information. A corrected escrow analysis provided June 28, 2022, then stated an escrow deficiency of

---

[13] *Id.* p. 2.

$2849.69, with the escrow payment increasing from $308.20 to $546.04, and a required monthly payment increasing to $1272.07.

The loan transaction history and escrow analysis provided by Golden Belt Bank will be discussed in more detail below, but to sum, they both indicate the Bank should have advised Debtors to make increased payments. The loan transaction history shows a negative escrow account balance, with a shortage in the escrow account, since June 2018.[14] The escrow analysis states the current escrow payment is $308.20, but then shows prior year projections requiring a monthly escrow payment of $383.46 for the twelve-month period of July 2021 through June 2022, and states the escrow deficiency is $1615.35 and the escrow shortage is $1234.34, for a total negative escrow of $2849.69.[15]

Debtors thereafter filed their motion seeking relief from this Court. Debtors' motion seeks: a determination they are current on their mortgage payments through June 2022, an order to Golden Belt Bank to credit Debtors' escrow account in the amount of the escrow deficiency and shortage and then run a new escrow analysis, an order that Golden Belt Bank be prohibited from charging any fees against Debtors for work surrounding this matter,

---

[14] Doc. 131, Ex. C, pages 9 to 11 of 15.
[15] Doc. 131, Ex. D, pages 12 to 15 of 15.

and an order requiring Golden Belt Bank to pay Debtors' fees related to this matter.[16]

## II.    Conclusions of Law

Contested matters concerning the "allowance or disallowance of claims against the estate" are core matters under 28 U.S.C. § 157(b)(2)(B) over which this Court may exercise subject matter jurisdiction.[17]

## A.    Federal Rules of Bankruptcy Procedure

Under 11 U.S.C. § 1322(b)(5),[18] a Chapter 13 debtor may maintain home mortgage payments through a plan where the last payment on the secured claim is due after the final payment under the plan. The Federal Rules of Bankruptcy Procedure contain procedures for filing proofs of claim related to security interests in an individual debtor's real property and for notices related to those claims. As applicable here, under Rule 3001(c)(2)(C), a mortgage proof of claim attachment must be filed with the proof of claim,

---

[16]  Debtors also requested Golden Belt Bank provide them a Satisfaction of Mortgage statement, indicating their second mortgage was paid in full. As noted above, the requested statement was provided, and the second mortgage is no longer at issue.

[17]  This Court has jurisdiction pursuant to 28 U.S.C. § 157(a) and §§ 1334(a) and (b) and the Amended Standing Order of the United States District Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's Bankruptcy Judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective June 24, 2013. D. Kan. Standing Order 13-1, *printed in* D. Kan. Rules of Practice and Procedure (March 2018).

[18]  All future references in the text to title 11 are to the section number only.

Case 17-12530    Doc# 137    Filed 01/19/23    Page 8 of 22

and "[i]f an escrow account has been established in connection with the claim, an escrow account statement prepared as of the date the petition was filed and in a form consistent with applicable nonbankruptcy law shall be filed with the attachment to the proof of claim."

Rule 3002.1 then addresses changes to mortgage claims.[19] The Advisory Committee Notes to the Rule succinctly state its objectives:

> In order to be able to fulfill the obligations of § 1322(b)(5), a debtor and the trustee must be informed of . . . the amount of the postpetition payment obligations. If the . . . amount changes over time, due to the adjustment of the interest rate, escrow account adjustments, or the assessment of fees, expenses, or other charges, notice of any change in payment amount needs to be conveyed to the debtor and trustee. Timely notice of these changes will permit the debtor or trustee to challenge the validity of any such charges, if necessary, and to adjust postpetition mortgage payments to cover any properly claimed adjustment.[20]

If a debtor does not know about a payment change, how can that payment change be addressed during the pendency of the Chapter 13 case? Rule 3002.1 "was adopted . . . to address a significant problem caused when mortgage companies applied fees and costs to a debtor's mortgage while the debtor was in bankruptcy without giving notice to the debtor and then, based on these post-petition defaults, sought to

---

[19] Rule 3002.1 was adopted in 2011 and amended in 2016 to apply to any Chapter 13 plans that have provisions for maintenance of a home mortgage on a debtor's principal residence under § 1322(b)(5). Fed. R. Bankr. P. 3002.1, Advisory Committee Notes. The parties do not dispute that Rule 3002.1 applies here.
[20] Rule 3002.1, Advisory Committee Notes (2011).

foreclose upon the debtor's property after the debtor completed the plan."[21]

To combat the issue of un-noticed mortgage payment changes, under Rule 3002.1(b)(1), a mortgage holder "shall file and serve . . . notice of any change in the payment amount, including any change that results from an interest-rate or escrow-account adjustment, no later than 21 days before a payment in the new amount is due." The debtor can then object to that notice of payment change and seek a determination from the Court "whether the change is required to maintain payments in accordance with § 1322(b)(5) of the Code."[22]

Additional procedures are in place at the end of a Chapter 13 debtor's case. Under Rule 3002.1(f) through (h), the following procedure should occur at the end of a Chapter 13 bankruptcy:

> **(f) Notice of final cure payment**
> Within 30 days after the debtor completes all payments under the plan, the trustee shall file and serve on the holder of the claim, the debtor, and debtor's counsel a notice stating that the debtor has paid in full the amount required to cure any default on the claim. . . .
>
> **(g) Response to notice of final cure payment**
> Within 21 days after service of the notice under subdivision (f) of this rule, the holder shall file and serve on the debtor, debtor's counsel, and the trustee a statement indicating (1) whether it agrees that the debtor has paid in full the amount required to cure

---

[21] *In re Howard*, 563 B.R. 308, 313 (Bankr. N.D. Cal. 2016).
[22] Rule 3002.1(b)(2).

10

the default on the claim, and (2) whether the debtor is otherwise current on all payments consistent with § 1322(b)(5) of the Code. The statement shall itemize the required cure or postpetition amounts, if any, that the holder contends remain unpaid as of the date of the statement. The statement shall be filed as a supplement to the holder's proof of claim and is not subject to Rule 3001(f).

**(h) Determination of final cure and payment**
On motion of the debtor or trustee filed within 21 days after service of the statement under subdivision (g) of this rule, the court shall, after notice and hearing, determine whether the debtor has cured the default and paid all required postpetition amounts.

By using this notice of final cure payment strategy, all parties can be ensured of the footing they leave bankruptcy on.

The failure to "provide any information" required by Rule 3002.1(b) during the case, or required by Rule 3002.1(g) at the end of plan payments, has consequences. Under Rule 3002.1(i), a court "may:"

(1) preclude the holder from presenting the omitted information, in any form, as evidence in any contested matter . . . in the case, unless the court determines that the failure was substantially justified or is harmless; or (2) award other appropriate relief, including reasonable expenses and attorney's fees caused by the failure.

A court may grant either or both remedies available under Rule 3002.1(i).[23]

---

[23] Rule 3002.1(i). *See also In re Roe*, No. 18-50046, 2021 WL 2946167, at *4 (Bankr. W.D. Mo. July 13, 2021) ("Rule 3002.1(i) affords the court discretion to impose consequences against the bank under either or both Rule 3002.1(i)(1) and (2).").

11

A mortgage creditor bears the burden of proof under Rule 3002.1—the mortgage creditor has access to the needed information, and the responsibility to share that information.[24]

## B.  Golden Belt Bank Failed under Rule 3002.1(b)

Once Debtors filed their bankruptcy petition, under Rule 3002.1(b), Golden Belt Bank was required to ("shall") notify Debtors of "any change" to the mortgage "payment amount," including "any change" resulting from an "interest-rate or escrow-account adjustment." That notice is required "no later than 21 days before a payment in the new amount is due."

The loan transaction history provided by Golden Belt Bank shows the creditor was deficient in communicating the maintenance of the escrow account, almost from the beginning of Debtors' bankruptcy case. On December 29, 2017, the date Debtors' Chapter 13 petition was filed, there was a positive escrow balance of $1418.90.[25] The mortgage proof of claim attachment to the proof of claim that was filed by Golden Belt Bank at filing, required by Rule 3001, showed the interest rate was 5.25% and the monthly required payment was $1041.30 (with $728.91 principal and interest and

---

[24]  *In re Morris*, 603 B.R. 127, 132 (Bankr. W.D. Okla. 2019) (despite it being the debtor filing a motion for determination of the mortgage payment, it is the creditor who has access to the information concerning the mortgage and therefore the creditor bears the burden of proving entitlement to the charges).

[25]  Doc. 131, Ex. C, p. 11 of 15.

$312.39 for "monthly escrow").[26] That $312.39 "monthly escrow" requirement is reflected in the loan transaction history as correct through February 6, 2019.[27]

Debtors stopped making their postpetition monthly mortgage payments with the May 2018 monthly payment. This is reflected in the loan transaction history. As noted above, after several months passed with no payment, in September 2018, Golden Belt Bank understandably sought relief from the automatic stay to pursue their remedies under the mortgage. A modification was agreed to in January 2019, setting the ongoing mortgage payment, including escrow amounts, at $1,037.11.[28] Unfortunately, the order stating this $1037.11 payment is not broken down into principal and interest versus escrow, but the parties apparently agree that at this point, the monthly escrow payment was reduced to $308.20. No interest rate is stated.

Despite the January 2019 modification, which undoubtedly caused Golden Belt Bank to analyze Debtors' mortgage and escrow account, Debtors' escrow account has been deficient since June 2018. The mortgage allowed Golden Belt Bank to create an escrow account, requiring payment of yearly taxes and insurance.[29] Golden Belt Bank does nothing to address, or even

---

[26] Proof of Claim No. 12-1, p. 18 of 20.
[27] Doc. 131, Ex. C, p. 11 of 15.
[28] Doc. 55.
[29] Proof of Claim No. 12-1, p. 13 of 20, p. 15 of 20.

13

acknowledge, the negative escrow balance beginning in June 2018 or why no escrow analysis was done. In addition, Debtors' mortgage included a variable interest rate, and provisions for that rate to be updated annually.[30] Again, Golden Belt Bank does not acknowledge, or address, the failure of Golden Belt Bank to do so.

Regardless, an escrow analysis should have been done in the summer of 2018; it apparently was not. The escrow account remained deficient throughout 2019, 2020, and 2021. In July 2020, Golden Belt Bank filed a Notice of Mortgage Payment Change, changing the monthly payment due to an interest rate change (from 5.38% to 5.25%), but nothing was done to address the significant escrow deficiency at that time either.[31] Further, there is no explanation for when the interest rate increased from the 5.25% it was at the petition date, to the 5.38% it was before it went back down to 5.25% with the July 2020 notice of payment change. For years, Golden Belt Bank essentially advanced money toward Debtors' insurance and taxes that should have been paid by Debtors.

The loan transaction history simply provides no explanation or clarity for much of the facts needed in this matter. The June 2022 escrow analysis

---

[30] *Id.* p. 6 of 20.
[31] In July 2020, the loan transaction history shows an escrow deficiency of $2638.51. Doc. 131, Ex. C, p. 10 of 15.

14

fares no better. It states the current escrow payment—current being June 2022—at $308.20, and says the new escrow payment as of September 1, 2022 will need to increase to $546.04 due to the escrow deficiency and shortage. But it also contains a "prior year projection," which presumably would be from July 2021 through June 2022. In that "prior year projection," the monthly payment for escrow is stated as $383.46. The Court can only assume that in July 2021, Golden Belt Bank did perform an escrow analysis and recognize the need for increased payments, but failed to inform Debtors, the Trustee, or the Bankruptcy Court, of this needed new escrow payment. This is an assumption; again, Golden Belt Bank does not assist the Court in understanding this "prior year projection."

As noted, Golden Belt Bank does not attempt to explain the loan transaction history or the escrow analysis, but it does attempt to justify its failures. First, Golden Belt Bank argues the need for the increased escrow monthly payment "resulted from advances made by [Golden Belt Bank] on May 2, 2022 in the amount of $1,084.95 for real estate taxes and made by [Golden Belt Bank] on June 24, 2022 for an insurance premium . . . in the amount of $1,533.00."[32] Golden Belt Bank contends it was these recent escrow disbursements and the timing of Debtors' May and June 2022

---

[32] Doc. 135 p. 6 ¶ 20.

payments that caused the escrow deficiency and shortage, and therefore, it has not failed to notify Debtors of a payment increase because the increase just occurred. This appears to be wishful thinking—as noted, the loan transaction history shows a negative escrow account balance since June 2018. And Golden Belt Bank's own June 2022 escrow analysis reflects prior year escrow projections requiring a higher monthly payment. This argument just does not make sense when looking at the entirety of the loan history.

Second, Golden Belt Bank argues it was exempt from disclosing escrow account payment changes because of a subsection of the Real Estate Settlement Procedures Act ("RESPA"), namely 12 C.F.R. § 1024.17(i)(2). Section 1024.17 sets out the requirements for escrow accounts on federally related mortgage loans. Under 12 C.F.R. § 1024.17(f)(1), a servicer must conduct an escrow account analysis "at the completion of the escrow account computation year." Then under 12 C.F.R. § 1024.17(i), the servicer must submit the annual escrow account statement to the borrower within 30 days of completion. But there is an exception to the requirement to provide the escrow account statement to the borrower "where the borrower is in bankruptcy proceedings."[33] Golden Belt Bank argues that because it was exempt under RESPA from providing the annual escrow account statement to

---

[33]  12 C.F.R. § 1027.17(i)(2).

Case 17-12530   Doc# 137   Filed 01/19/23   Page 16 of 22

Debtors because Debtors were in bankruptcy, it did not actually make any escrow adjustments to Debtors' account and did not violate Rule 3002.1. But just because RESPA creates an exception for a servicer to provide a statement to a debtor in bankruptcy, does not mean that creditor is exempt from the requirements of RESPA to run the escrow analysis, exempt from the requirements of an individual contract, or exempt from the requirements of the Bankruptcy Rules.

Finally, Golden Belt Bank argues Debtors have suffered no harm from the deficiencies. Golden Belt Bank points out Debtors are not in default on their mortgage, and it has not sought to foreclose. Golden Belt Bank also notes Debtors' bankruptcy case is still open and Debtors could (theoretically) pay the needed escrow amount in a lump sum before the case is closed.[34] But the harm Debtors are experiencing is the exact harm Rule 3002.1 was designed to avoid. Debtors have completed payments on their Chapter 13 plan. Debtors' discharge has been entered. Golden Belt Bank had "numerous, obvious opportunities" to identify the needed increase to the escrow payment

---

[34] Golden Belt Bank also argues Debtors were not harmed because even if there had been an earlier escrow analysis, Debtors would have still had to pay the increased escrow amount. Which is of course true, but that is the point – Debtors should have been given the opportunity to pay the increased amount at the time it increased.

at any point between June 2018 and June 2022, but failed to do so.[35] Instead, Golden Belt Bank ignored the Bankruptcy Rule's requirements and did nothing until the case was being closed.[36] Rule 3002.1 is designed to prevent the exact harm that is present in this case.[37]

To sum, Golden Belt Bank has not carried its burden under Rule 3002.1. At some point, presumably in July 2019, Golden Belt Bank changed the interest rate on the mortgage without informing the Court under Rule 3002.1(b). At some point, possibly in July 2021, Golden Belt Bank ran an escrow analysis and projected a needed increase to escrow payments, but again did not inform the Court, the Chapter 13 Trustee, or the Debtors under Rule 3002.1(b). These are just the facts the Court can cobble together, poring

---

[35] *See In re Clark*, No. 11-11723-R, 2018 WL 6266179, at *12 (Bankr. N.D. Okla. Nov. 26, 2018) ("the Mortgagee had numerous, obvious opportunities to notify the Clarks that the monthly mortgage payment stated in the Plan was incorrect").

[36] *See, e.g.*, *In re Roper*, 621 B.R. 899, 902 (Bankr. D. Colo. 2020) (concluding Rule 3002.1 "does not allow the secured creditor to silently accrue additional amounts and then spring a 'gotcha' foreclosure after the debtor has completed her plan and emerged from bankruptcy protection"); *In re Hoyt-Kieckhaben*, 546 B.R. 868, 870 (Bankr. D. Colo. 2016) ("Why this lender, and many others recently, have chosen to remain silent in the face of such substantial defaults remains a mystery to the Court. At any time, these lenders could seek relief from the automatic stay or file a motion to dismiss. Instead they do nothing until they respond to the Rule 3002.1 notice near the conclusion of the plan.").

[37] *In re Humes*, 579 B.R. 557, 565 (Bankr. D. Colo. 2018) ("The main purpose behind Rule 3002.1 is to force mortgage lenders to give timely notice to a debtor of any postpetition changes in their mortgage payment. The process had previously been problematic because mortgage holders would frequently fail to inform a debtor of significant postpetition payment changes and charges until after discharge, thereby leaving a significant arrearage even though the debtor had diligently made all plan payments.").

18

over the loan transaction history and the June 2022 escrow analysis. Golden Belt Bank has not itself explained or analyzed the data. Golden Belt Bank does not explain or address the negative escrow account balance that has existed since June 2018. The bottom line is that Golden Belt Bank has failed in its duties under Rule 3002.1(b) and has not caried its burden of proof.

Further, Golden Belt Bank has not persuaded the Court that its failures were "substantially justified or harmless" under Rule 3002.1(i)(1). As a result, the Court relies on Rule 3002.1(i)(1) to exclude evidence from Golden Belt Bank that there is an escrow deficiency and finds the mortgage is current as of the Chapter 13 Trustee's notice of final cure payment on June 13, 2022. Golden Belt Bank must credit the deficient escrow account the amount needed to be current as of June 13, 2022, and then run a new escrow analysis. In this case, Golden Belt Bank advanced money that should have been paid by Debtors, and it may appear inequitable to require Golden Belt Bank to now credit the escrow account. But the Bankruptcy Rules are in place to instill certainty in the bankruptcy process and eliminate surprises. Golden Belt Bank did not follow those systems, and the Rules mandate this result.

C.    **Golden Belt Bank's Failures under Rule 3002.1(g)**

The parties agree and stipulate that under Rule 3002.1(g), Golden Belt Bank had twenty-one days to file a response to the Trustee's Notice of Final Cure Payment, and Golden Belt Bank did not file a response.

Golden Belt Bank argues that even though it did not comply with the requirements of Rule 3002.1(g) by filing a response to the Chapter 13 Trustee's notice of final cure payment, it provided the "information" required by Rule 3002.1(g) when it supplied its June 2022 escrow account analysis to Debtors by mail, so it should not be penalized by any of the actions permitted of the Court in Rule 3002.1(i). The Court concludes it does not need to address Golden Belt Bank's failure to respond as required by Rule 3002.1(g), because the Court is not basing its decision on Rule 3002.1(g). Instead, the Court relies on Golden Belt Bank's failures to provide information under Rule 3002.1(b) to exclude the evidence of an escrow deficiency. Under Rule 3002.1(i), the Court may award remedies to Debtors based on a mortgage holder's failures under either Rule 3002.1(b) or Rule 3002.1(g).

D.    **Additional Relief Awarded to Debtors**

The Court excludes evidence from Golden Belt Bank claiming an escrow deficiency or shortage under Rule 3002.1(i)(1). Under Rule 3002.1(h), the Court confirms Debtors' first mortgage is current as of the Chapter 13 Trustee's notice of final cure payment on June 13, 2022. Golden Belt Bank

20

must credit the deficient escrow account the amount to be current as of June 13, 2022, and then run a new escrow analysis as of that date.

Debtors also seek an Order prohibiting Golden Belt Bank from assessing any fees, including attorney fees, against Debtors for work related to this matter, and requiring Golden Belt Bank to pay Debtors' attorney fees, under Rule 3002.1(i)(2). Under the circumstances of this case, the Court exercises its discretion to grant the requested relief. Rule 3002.1(i)(2) authorizes the Court to award the reasonable attorney's fees and costs associated with litigating any failure to notify under the Rule. As discussed herein, Golden Belt Bank failed to provide notices required by Rule 3002.1(b). Prohibiting Golden Belt Bank from assessing fees on this matter, and requiring the Bank to pay Debtors' fees regarding this matter, will enforce the requirements of the Rule. Without a penalty, there is no justification to change systems to ensure compliance.

Golden Belt Bank is prohibited from charging any fees against Debtors for work surrounding this matter. Debtors' counsel should file an itemization of its attorney's fees related to this matter. The Court will then enter a separate order requiring Golden Belt Bank to pay fees as determined therein.

## III. Conclusion

Debtors' motion for a determination their mortgage payment is current and for sanctions[38] is granted. Golden Belt Bank shall credit the deficient escrow account the amount of the shortage to be current as of June 13, 2022, and then run a new escrow analysis as of that date. Golden Belt Bank is prohibited from collecting this escrow adjustment in any way and in any court.

All regular, postpetition mortgage payments, including principal and interest, and escrow, have been made by Debtors on Proof of Claim No. 12. This mortgage obligation is deemed current as of June 13, 2022. Golden Belt Bank shall adjust its escrow account balance to reflect this status.

Debtors' counsel should file an itemization of Debtors' attorney's fees related to this matter, indicating the "reasonable expenses and attorney's fees" requested by Debtors under Rule 3002.1(i)(2). The Court will then enter a separate order stipulating the fee award.

**It is so Ordered.**

###

---

[38] Doc. 122.